UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROBERTO URANGA,

Plaintiff,

v.

CHRISTOPHER J. HICKS, et al.,

Defendants.

Case No. 3:26-cv-00507-ART-CLB

ORDER PARTIALLY ADOPTING REPORT & RECOMMENDATION

*Pro se* Plaintiff Roberto Uranga brought this action in July 2026, asserting five constitutional claims against Washoe County District Attorney Christopher Hicks, Washoe County, the State of Nevada, the City of Sparks, the Sparks Police Department (SPD), and SPD Officers Haas and Doe. (ECF No. 1-1.) He also filed an application to proceed *in forma pauperis*. (ECF No. 1.)

Before the Court now is the Report and Recommendation ("R&R") issued by Magistrate Judge Carla Baldwin, recommending that Mr. Uranga's application to proceed *in forma pauperis* be granted and that certain claims be dismissed without leave to amend. (ECF No. 3.) Mr. Uranga objected to the R&R. (ECF No. 6.) He later filed a motion for leave to amend his complaint, along with a proposed amended complaint. (ECF Nos. 10, 10-2.)

Upon review, the Court adopts the R&R insofar as it recommends granting the application to proceed *in forma pauperis* and dismissing four of five claims. However, the Court dismisses some claims with leave to amend. The Court thus also grants Mr. Uranga's motion for leave to file an amended complaint.

## I. BACKGROUND

According to Mr. Uranga's complaint, this action arises from a domestic dispute between him and his adult son. (ECF No. 1-1 at 3-4.) Mr. Uranga reported the dispute to the Sparks Police Department ("SPD") and two SPD officers—Officer

Haas and an Officer Doe—visited and allegedly searched Mr. Uranga's residence, where the dispute took place. (*Id.* at 3-4.) The Washoe County District Attorney's Office ("WCDA") decided to pursue charges against Mr. Uranga's son. (*Id.* at 4-5.) One day after the dispute, Mr. Uranga sought to recant his report and explained to the WCDA that he did not intend to initiate prosecution against his son. (*Id.*) He was told that pursuant to the WCDA's "no-drop" policy, the prosecution would proceed despite his recantation. (*Id.* at 5.)

In his complaint, Mr. Uranga describes the no-drop policy and claims that it (1) violates the Fourteenth Amendment's Due Process Clause under 42 U.S.C. § 1983; (2) violates the Fourteenth Amendment's Equal Protection Clause under § 1983; (3) constitutes excessive punishment under the Eighth Amendment; and (4) violates his fundamental right to familial association under the Fourteenth Amendment. (*Id.* at 6-9.) Mr. Uranga's fifth and final claim alleges that SPD Officer Doe's search of his residence violated the Fourth Amendment. (*Id.* at 9.)

Judge Baldwin issued the present R&R screening the complaint and recommending that Mr. Uranga's *in forma pauperis* application be granted and that four of the five claims—those targeting the no-drop policy—be dismissed without leave to amend. (ECF No. 3.) Mr. Uranga filed an objection, challenging the R&R insofar as it recommended dismissal of four claims without leave to amend. (ECF No. 6.) While the R&R was pending, Mr. Uranga later filed a motion for leave to amend his complaint to add three new defendants, reframe several of his claims, and add an additional First Amendment claim. (ECF Nos. 10, 10-2.)

## II. LEGAL STANDARD

Magistrate judges are empowered to issue reports and recommendations on dispositive issues, which district judges may "accept, reject, or modify, in whole or in part." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and

recommendation] to which objection is made." *Id.* In contrast, a court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). But the nature of district court review of R&Rs, objected-to or not, ultimately falls within the district court's discretion. *Webb v. Califano*, 468 F. Supp. 825, 828 (E.D. Cal. 1979) ("The nature of that review will vary with the circumstances, and the court has the discretion to determine the extent to which it will review the matter.").

In this case, Uranga filed his objection to the R&R on August 20, 2026, two days after the August 18 deadline for doing so. (ECF No. 6.) In its discretion, the Court elects to treat this objection as timely and thus applies de novo review.

## III. DISCUSSION

Mr. Uranga objects only to the recommended dismissal without leave to amend of his four claims challenging the WCDA's no-drop policy. (ECF No. 6 at 1.) The scope of the Court's review of the R&R is limited accordingly.

### A. Dismissal of the Claims

Under the statute governing *in forma pauperis* proceedings, a court should dismiss an action that, in relevant part, "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the Court applies the same standard as is applied under Rule 12(b)(6). *See e.g., Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

Under that standard, a complaint must contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the Court must accept as true the allegations in a

complaint, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, allegations in *pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

Mr. Uranga's claims challenging the no-drop policy, as framed in his original complaint (ECF No. 1 at 8-9), are insufficient to survive this standard. In one sentence each, the claims broadly allege that the no-drop policy and Defendants' actions pursuant to it violate the Eighth Amendment, the Fourteenth Amendment, or both. (*Id.*) Although Mr. Uranga correctly cites 42 U.S.C. § 1983 as the authority for his Fourteenth Amendment claims, *Magana v. Commonwealth of the N. Mariana Islands*, 107 F.3d 1436, 1441-42 (9th Cir. 1997) (explaining that the Supreme Court has "made clear the necessity for § 1983 as the statutory vehicle for bringing claims under the Fourteenth Amendment"), he otherwise provides only conclusory statements about the constitutional violations he allegedly suffered through Defendants' actions. For example, he states that "Defendants . . . have deprived [him] of liberty and property interests" without identifying any protected interests at issue. (ECF No. 1 at 8.) And as Judge Baldwin identifies in the R&R (ECF No. 3 at 4), the claims at issue do not specify which defendants are responsible for which constitutional harms. Against the backdrop principle that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1975), the complaint does not state a sufficiently plausible claim against the no-drop policy. The Court thus concludes that the four contested claims are rightly dismissed.

**B. Leave to Amend**

The remaining question is whether the claims should be dismissed without leave to amend. Under Federal Rule of Civil Procedure 15, "[i]n general, a court

should liberally allow a party to amend its pleading." *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013). This principle "is applied even more liberally to pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987). To determine whether leave to amend should be granted, a court "consider[s] five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). An amendment is "futile only if no set of facts can be proved under the amendment that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In this case, the only basis for denying leave to amend is the possibility that amendment would be futile. In the R&R, Judge Baldwin recommends finding amendment futile because under Supreme Court precedent, "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *United States v. Texas*, 599 U.S. 670, 673 (2023) (quoting *Linda R.S.*, 410 U.S. at 619). Because Mr. Uranga was neither prosecuted nor threatened with prosecution under the no-drop policy, Judge Baldwin concluded that he lacked standing to challenge it, such that Mr. Uranga cannot state a valid and sufficient claim. (ECF No. 3 at 4-5.)

The Court agrees that under the above caselaw, Mr. Uranga does not have standing to directly challenge District Attorney Hicks's decision to prosecute his son under the no-drop policy. Such a claim would also be barred by District Attorney Hicks's absolute immunity from claims challenging actions taken pursuant to his prosecutorial functions. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). To the extent that the complaint challenges such decisions, amendment

is futile. For that reason, dismissal without leave to amend is warranted as to Mr. Uranga's Eighth Amendment claim, which alleges that the no-drop policy "exposes individuals to wrongful prosecution, excessive punishment, and governmental overreach." (ECF No. 1 at 8.)

But Mr. Uranga's pleadings, construed liberally, also assert a separate harm that justifies granting leave to amend. Specifically, he alleges that the WCDA's no-drop policy is implemented "without notice or explanation to those affected" and without "procedural guardrails" or oversight. (*Id.* at 6.) Essentially, Mr. Uranga takes issue with the fact under the no-drop policy, victims and/or reporters of domestic incidents are not informed that by seeking police assistance, they are initiating a process by which their family member may be prosecuted irrespective of the reporter's intentions or wishes. This concern exists independently from whether the WCDA in fact elects to proceed with a given prosecution; it is thus distinguishable from the cases where courts found a lack of standing to challenge prosecutorial decision-making. *See e.g., Linda R.S.*, 410 U.S. at 616 (concluding that the plaintiff lacked standing to compel certain prosecutions); *United States v. Texas*, 599 U.S. at 677 (same); *Younger v. Harris*, 401 U.S. 37, 42 (1971) (concluding that third parties had no standing to enjoin the pending prosecution of another based on claims that it chilled their First Amendment rights for fear of also being prosecuted). The complaint ties these harms to the Fourteenth Amendment by claiming violations of procedural and substantive due process, equal protection, and a fundamental right to familial association. (ECF No. 1 at 8-9.) As the R&R notes (ECF No. 3 at 4), such a challenge could ordinarily be construed as a *Monell*[1] claim, to the extent it alleges a theory of harm distinct from the type of claim barred by the standing principles discussed above.

---

[1] *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658 (1978).

In sum, given the liberal amendment standard for *pro se* plaintiffs, *Eldridge*, 832 F.2d at 1135, the Court thus concludes that amendment of Mr. Uranga's Fourteenth Amendment claims is not futile. Rather, some set of facts may exist to support a viable *Monell* claim against municipal defendants addressing aspects of the no-drop policy. *Rykoff-Sexton, Inc.*, 845 F.2d at 214.

## IV. CONCLUSION

It is therefore ordered that the R&R (ECF No. 3) is ADOPTED IN PART insofar as it recommends granting the application to proceed *in forma pauperis* (ECF No. 1), dismissing Claims 1-4 in the complaint, dismissing District Attorney Hicks and the State of Nevada as defendants, and denying leave to amend the Eighth Amendment claim.

It is further ordered that the R&R is REJECTED IN PART insofar as it recommends denying leave to amend the Fourteenth Amendment claims.

It is further ordered that Plaintiff's pending motion for leave to amend (ECF No. 10) is DENIED AS MOOT. Plaintiff shall have until November 6, 2026, to file a new amended complaint consistent with this order.

Dated this 8th day of October 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE